UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**KYLE H.,**[1]

      **Plaintiff,**

v.                                                               **Civil Action 1:24-cv-258**
                                                             **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**OPINION AND ORDER**

      Plaintiff, Kyle H. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits and supplemental security income benefits. This matter is before the undersigned on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 7). Plaintiff did not file a reply. For the reasons below, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.

                                                         **I.**       **BACKGROUND**

      Plaintiff protectively filed his application for Title II disability insurance benefits and Title XVI supplemental security income benefits on August 2, 2018, alleging that he became

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

disabled on June 13, 2017. After Plaintiff's applications were denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held a telephone hearing on June 2, 2020, and issued an unfavorable determination on August 5, 2020. That unfavorable determination became final on January 19, 2021, when the Appeals Council denied Plaintiff's request for review. Plaintiff sought judicial review of that final determination before this Court. On January 12, 2022, the undersigned remanded the case to the Commission under Sentence Four of § 405(g) for further consideration. (*See* Case No. 2:21-cv-1173.) On remand, a different ALJ held a supplemental hearing on April 4, 2023, and issued another unfavorable determination on May 25, 2023. That unfavorable determination became final on March 4, 2024, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts a single contention of error: that the ALJ failed to properly evaluate the opinion of Plaintiff's treating nurse practitioner. This contention of error lacks merit.

## II. THE ALJ'S DECISION

On May 25, 2023, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act. (R. 688–706.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date of June 13, 2017. (*Id.* at 691.) At step two, the ALJ found that Plaintiff had the severe impairments of type 1 diabetes mellitus without complication; diabetic polyneuropathy associated with type 1 diabetes mellitus; mild degenerative changes of facet joint bilaterally at L4/5 and L5/S1; insomnia; anxiety and obsessive-compulsive disorders; and depressive, bipolar and related disorders. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 692–97.) The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he has the following additional limitations: he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit for up to 6 hours out of an 8-hour workday; he can stand and/or walk for 6 hours out of an 8-hour workday; he must have the option to alternate to a seated position for 5 minutes after every 30 minutes of standing and/or walking, but he should not be away from his workstation or off task; he can push and/or pull as much as he can lift and/or carry; he can operate foot controls with his right foot frequently; he can operate foot controls with his left foot frequently; he can operate hand controls with his right hand frequently; he can operate hand controls with his left hand frequently; he can frequently reach overhead to the left, and frequently reach overhead to the right; for all other reaching, he can reach frequently to the left, and he can reach frequently to the right; he can handle items frequently with the left hand, and he can handle items frequently with the right hand; he has fingering limitations frequently with the left hand, and he has fingering limitations frequently with the right hand; he has feel limitations frequently on the left, and has feel limitations frequently on the right; he can climb ramps and stairs occasionally; he should never climb ladders, ropes, or scaffolds; he can balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally; he should never work at unprotected heights; he should never work around moving mechanical parts; he can work in vibration frequently; and he is able to perform simple, routine tasks.

(*Id.* at 696.) As part of her RFC analysis, the ALJ included the following discussion of the opinion of Plaintiff's treating nurse practitioner, Joshua Bryant, CNP:

> On June 1, 2020, Nurse Practitioner Bryant completed a Medical Opinion Re: Ability to Do Work-Related Activities form and opined that [Plaintiff] was not capable of performing a full-time job that was 8 hours per day, five days per week, on a regular and continuing basis with the following functional limitations:
>
> - he could stand and walk for 2 hours (with normal breaks) during an 8-hour workday;
>
> - he could sit for 2 hours (with normal breaks) during an 8-hour workday;
>
> - he could lift and carry 50 pounds on an occasional basis;
>
> - he could lift and carry 20 pounds on a frequent basis;
>
> - he needed the freedom to shift at will between sitting or standing and/or walking;
>
> - he needed to lie down at unpredictable times during an 8-hour workday; and
>
> - his impairments, conditions, symptoms and treatment would cause him to be absent from work more than 4 times a month[.]

4

[R. 664.]

The undersigned notes that the limitation in walking is not consistent with him being able to lift and carry 50 to 70 pounds. Nurse Practitioner Bryant's opinion that the claimant needed to lie down or would be absent four times a month is not supported in the record and/or the claimant's treatment protocols. Nurse Practitioner Bryant's opinion findings are inconsistent with the overall objective evidence, not well-supported, and are contradicted by both Dr. Knierim's and Dr. Lewis' review and finding a light exertional residual functional capacity. Nurse Practitioner Bryant's opinion is not persuasive. I note that there is evidence showing the claimant was able to complete "hard daily labor including chopping trees and heavy lifting on the farm" (11F/40) and use a "weed eater" (10F/53). This evidence does not support the need to lie down as needed nor the need to miss more than four days of work per month. As for the evidence suggesting the claimant's inability to afford a diabetic diet (11F/32) and fear of needles resulted in him not taking insulin as prescribed to him (11F/27), the evidence showed he was able to obtain diabetes treatment in a less invasive fashion (Id.). The need to lie down and miss so many days of work per month is not supported by the mild degenerative findings exhibited on imaging reports (10F/58). As for frequent reports of diarrhea, the evidence showed the claimant's testing was normal and one test even showed mild-moderate amounts of stool in his colon which does not support subjective allegations of diarrhea, up to five times per day. This opinion is not persuasive.

(*Id.* at 701.)

The ALJ then relied on the hearing testimony of a Vocational Expert ("VE") at steps four and five to conclude that Plaintiff could not perform his past relevant work, but that there are other jobs existing in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform during the relevant period, such as furniture-rental consultant, counter clerk, and usher. (*Id.* at 704–05.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 705.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)

5

(cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

IV.     ANALYSIS

As set forth above, Plaintiff asserts a single contention of error: that the ALJ failed to properly evaluate the opinion of Plaintiff's treating nurse practitioner. (Statement of Errors, ECF No. 12.) Specifically, Plaintiff contends that the ALJ's discussion of the opinion's supportability

and consistency was not supported by substantial evidence. (*Id.* at 12–18.) The undersigned disagrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*. The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). When evaluating medical opinions, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she need not do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent

---

[4] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

7

with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, the ALJ considered Mr. Bryant's opinion—that Plaintiff could stand/walk for 2 hours, sit for 2 hours, lift/carry 50 pounds on an occasional basis, and lift/carry 20 pounds on a frequent basis; and that Plaintiff needed the freedom to shift at will between sitting or standing/walking and to lie down at unpredictable times—and found it unpersuasive. The undersigned finds no error with the ALJ's consideration of Mr. Bryant's opinion. As to supportability, the ALJ states Mr. Bryant's opinion overall "is not well-supported" and that the need to lie down or be absent four times a month is not supported in the record or Plaintiff's treatment protocols. The ALJ found these limitations to be unsupported by the mild degenerative findings exhibited on imaging reports. (R. 701 (citing R. 518)).

As to consistency, the ALJ noted that Mr. Bryant's opinions are inconsistent with the medical file reviews of state agency reviewers Dr. Kneirim and Dr. Lewis, who opined that Plaintiff could lift/carry 20 pounds on an occasional basis, lift/carry 10 pounds on a frequent basis, and stand/walk or sit for 6 hours each per day. (R. 702 (citing R. 56–57, 69–70, 85–86, 101–02).) Mr. Bryant's opined limitations were also noted to be inconsistent with Plaintiff's engaging in "hard daily labor including chopping trees and heavy lifting on the farm" and using a "weed eater." (*Id.* at 701 (quoting R. 640 and 513)). Finally, the ALJ noted that Mr. Bryant's opinion that Plaintiff could lift/carry 50 pounds on an occasional basis (i.e., up to 2 hours and 40 minutes per day) and 20 pounds on a frequent basis (i.e., up to 5 hours and 20 minutes per day) was internally inconsistent with Mr. Bryant's own opinion that Plaintiff could stand/walk for only two hours per day. (R. 701.) The undersigned therefore finds that the ALJ's discussion of Mr. Bryant's opinion satisfied the requirements of §§ 404.1520c and 416.920c.

8

Plaintiff's arguments to the contrary are unavailing. As to supportability, Plaintiff merely summarizes Mr. Bryant's treatment notes and then states in a conclusory fashion that "[a]ll of these findings support the conclusions made by Nurse Bryant about Plaintiff's work-related capabilities." (Statement of Errors 14–16, ECF No. 12.) But Plaintiff makes no effort to connect these treatment notes to the specific opinions of Mr. Bryant, just as Mr. Bryant made no effort to support his findings on the checkbox form he used to provide his opinion. *See Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, *13 (N.D. Ohio June 4, 2018) ("Numerous decisions have found that the use of checklist or check-the-box forms that contain little to no accompanying explanation for the assessed limitations—even when utilized by a treating physician or acceptable medical source—are unsupported opinions . . . ." (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) ("Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on those grounds."); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) ("[C]hecklist forms . . . which require only that the completing physician check a box or fill in a blank, rather than provide a substantive basis for the conclusions stated, are considered weak evidence at best in the context of a disability analysis.") (internal quotation marks and citation omitted). The connection between Mr. Bryant's treatment notes and his opined limitations is not apparent, and thus the ALJ's conclusion that Mr. Bryant's opinion was unsupported is supported by substantial evidence.

Plaintiff next contends that Mr. Bryant's opinions are consistent with Plaintiff's reports to Mr. Bryant, Plaintiff's reports to the agency, and Plaintiff's testimony at his hearing. (Statement of Errors 14, ECF No. 12.) But consistency with Plaintiff's own reports does not broadly render Mr. Bryant's opinions consistent with the record as a whole, which is the relevant comparison.

9

*See* 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2) (requiring analysis of consistency between the medical opinion in question and "the evidence from other medical sources and nonmedical sources in the claim"). And Plaintiff does not argue that Mr. Bryant's opinions are not, in fact, inconsistent with the portions of the record identified by the ALJ; Plaintiff merely argues that the ALJ should not have relied on those portions. (*Id.* at 16–18.) Again, the undersigned disagrees.

Plaintiff contends that the ALJ should not have relied on the opinions of the state agency reviewers because their review was undertaken in November 2018 and April 2019, respectively, before much of the treatment in this case and before Mr. Bryant's updated treatment notes. (*Id.*) But Plaintiff does not identify any evidence in the later record that would have altered the state agency reviewer's opinions. Moreover, the ALJ specifically noted that the state agency reviewers' opinions are "consistent with the medical evidence from subsequent records, which show images of only mild degenerative changes." (R. 702.) *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition. It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in McGrew's condition."); *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (affirming the Magistrate Judge's decision which noted that "[t]here will always be a gap between the time the agency experts review the record and . . . the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.").

Next, Plaintiff objects to the ALJ's reliance on a comment by Plaintiff's physical therapist that Plaintiff "continues to complete hard labor daily including chopping trees and heavy lifting on the farm which may certainly impact limited progress." (R. 701 (quoting R. 640).) Plaintiff complains that the ALJ lacked sufficient details about Plaintiff's "hard labor" and should have questioned Plaintiff about this comment at the hearing "to determine the frequency of these activities, the difficulty in performing these activities, if any, how Plaintiff feels after these activities, etc." (Statement of Errors 17, ECF No. 12.) But Plaintiff reported engaging in these activities "daily" and the intensity of the activities can be fairly understood from the descriptions of "chopping trees and heavy lifting." The ALJ had sufficient information from the comment itself to properly include it in her consistency analysis.

Nor was it error for the ALJ to rely on Plaintiff's report to his physical therapist that he used a "weed eater" on the farm the morning before one of his physical therapy appointments. (R. 701 (quoting R. 513).) Plaintiff argues that "[u]se of a weed eater should not be sufficient reason to disregard Nurse Bryant's opinion about Plaintiff's work-related capabilities over an 8-hour work day." (Statement of Errors 17, ECF No. 12.) But that is not what the ALJ did—the ALJ merely noted the inconsistency between Mr. Bryant's opinions and Plaintiff's use of a weed eater as one of many reasons why Mr. Bryant's opinion was unpersuasive.

In sum, the Court concludes that the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c and that the ALJ's supportability and consistency analysis was supported by substantial evidence. Although Plaintiff cites other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it,

11

even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE